UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　　v.<br>APPROXIMATELY $50,000 in U.S. CURRENCY,<br>　　　　Defendant. | Case No. 4:17-cv-00478-HSG (DMR)<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 17 |

Plaintiff United States brought this *in rem* civil forfeiture action and now moves for default judgment against Defendant Approximately $50,000 in United States Currency (the "Currency"). [Docket No. 17 (Mot.).] No one has filed an opposition. The Honorable Haywood S. Gilliam referred this matter to the undersigned for the preparation of a Report and Recommendation. For the reasons below, the court recommends that the government's motion be GRANTED.

**I.　BACKGROUND**

**A. Factual Allegations**

On August 31, 2016, the United States Postal Inspection Service ("USPIS") investigated a United States mail parcel at the San Francisco International Service Center that exhibited "multiple suspicious characteristics of parcels containing illegal narcotics, contraband, or money or monetary instruments that are proceeds of illegal activity." [Docket No. 1 (Compl.) ¶¶ 7, 8.] These indicators included the use of Express Mail, which is a service that the government contends is frequently used by drug traffickers; the presence of a handwritten label; and the fact that the package displayed the zip code of a mailing location different from the zip code listed for the return address. *Id*. at ¶¶ 9-11. The USPIS inspectors presented the parcel to a trained and

certified San Francisco Police Department narcotics detection canine who exhibited a change in behavior that was "consistent with the canine's detection of the odor of a controlled substance the canine is certified to detect." *Id*. at ¶ 12.

The parcel was addressed to "Lizz Guzman" at a post office box address in Petaluma, California. Upon investigation, the USPIS inspectors found that a "Liz Guzman" had applied for the post office box. *Id*. at ¶ 14. The return address on the parcel was listed as "R. Robinson" in Baton Rouge, Louisiana. *Id*. at ¶ 11. The USPIS inspectors called the number listed for Robinson on the Express Mail label and found that it was invalid. *Id.* at ¶ 13. The inspectors called the phone number listed on the package for the recipient and spoke to a woman who identified herself as Guzman, the owner of the post office box. When the inspectors asked her what the parcel contained, she replied "stuff for design," and responded "yes" when asked if it was "fashion design stuff." *Id*. at ¶ 15. The inspectors asked Guzman for permission to open the parcel to verify the contents, and she provided her consent. *Id*. at ¶ 15, 17. On August 31, 2016, the USPIS inspectors received a telephone call from a male subject identifying himself as Roy Robinson. *Id.* at ¶ 16. Robinson informed the inspectors that he mailed the parcel to Guzman and that it contained $50,000 in cash. When asked why he mailed the cash to Guzman, Robinson stated that the cash was "for a transaction to buy property," and that the purchase price of the property was $150,000. *Id*. The inspector attempted to question Robinson further about the property, but he hung up. *Id.* Upon opening the parcel, the inspectors found vacuum-sealed plastic bags containing $50,000 in U.S. currency. *Id*. at ¶¶ 17, 18. The cash consisted entirely of small denominations, namely, 2,500 $20 bills, and the parcel contained no notes, receipts, or instructions. *Id.* at ¶¶ 18, 19. The government alleges that both characteristics are inconsistent with legitimate business transactions, and are instead common indicators of narcotics trafficking. *Id*.

Robinson and William Guzman, the spouse of Liz Guzman, have each been arrested within the last eight years for marijuana-related criminal offenses. *Id*. at ¶ 20. The USPIS ultimately seized the parcel and the Currency. *Id*. at ¶ 7.

**B. Procedural History**

On January 30, 2017, the government filed a verified complaint to obtain the forfeiture of the Currency pursuant to 21 U.S.C. § 881(a)(6) as moneys furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and 846.[1] Compl. ¶¶ 24-26. On February 1, 2017, the Clerk issued an arrest warrant *in rem*. [Docket No. 5 (Arrest Warrant).]

On February 1, 2017, the government sent notice of the forfeiture action via certified mail to Liz Guzman. [Docket No. 6 (Certificate of Service).] The notice included the Complaint for Civil Forfeiture, notice of the forfeiture action including information about filing deadlines, and other related documents. The government sent notice of the action to three different addresses for Guzman, including the address originally listed on the parcel. Certificate of Service. Guzman signed a U.S. Postal Service certified mail receipt certifying that she received the mail providing notice of the action on February 4, 2017. [Docket No. 23 (Lopez Decl., Aug. 2, 2017) ¶¶ 5, 6, Ex. A.] On February 1, 2017, the government also mailed notice of the forfeiture action to Roy Robinson at the address listed on the parcel. Certificate of Service. Robinson did not sign the receipt to acknowledge he received service. Therefore, the government personally served Robinson with the documents on March 3, 2017. [Docket No. 12 (Robinson Certificate of Service)].

Starting on February 2, 2017, the government posted notice of the forfeiture on an official government internet site (www.forfeiture.gov) for at least 30 consecutive days. [Docket No. 13 (Proof of Publication of Notice).]

Having received no claim to the Currency or answer to the verified complaint, the government moved for entry of default. [Docket No. 15]. The clerk entered default on April 19, 2017. [Docket No. 16 (Default)]. On May 16, 2017, the government filed the present motion,

---

[1] 21 U.S.C. § 841 provides in relevant part that it is unlawful for any person "knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ." 21 U.S.C. § 841(a)(1). 21 U.S.C. § 846 states, "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

3

1 which Judge Gilliam referred to the undersigned for preparation of a Report and Recommendation.

2 [Docket No. 18.] On July 27, 2017, the court ordered the government to submit supplemental

3 evidence in support of the motion for default judgment, which the government timely filed on

4 August 2, 2017. [Docket Nos. 22, 23.]

**II.     CIVIL FORFEITURE**

The government brings this action under 21 U.S.C. § 881, which provides for the forfeiture of "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter . . . ." 21 U.S.C. § 881(a)(6). "Forfeiture is a harsh and oppressive procedure which is not favored by the courts." *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1069 (9th Cir. 1994) (quotation omitted). The Ninth Circuit has stated that it is "particularly wary of civil forfeiture statutes, for they impose 'quasi-criminal' penalties without affording property owners all of the procedural protections afforded criminal defendants." *Id*. at 1068. "[F]orfeitures should be enforced only when within both letter and spirit of the law," *United States v. Marolf*, 173 F.3d 1213, 1217 (9th Cir. 1999) (quotation omitted), and "forfeiture statutes are strictly construed against the government." *$191,910.00 in U.S. Currency*, 16 F.3d at 1068 (citation omitted). Accordingly, "strict adherence to procedural rules is paramount in civil forfeiture proceedings." *United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 01:09-CV-2319-LRH-RJJ, 2010 WL 2695637, at *1 (D. Nev. July 2, 2010) (citing *Marolf*, 173 F.3d at 1217 (denying forfeiture where government failed to provide due notice to property owner)).

Property subject to civil forfeiture may be forfeited under the Federal Rules of Civil Procedure Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Fed R. Civ. P. Supp.") and this District's Admiralty & Maritime Local Rules. *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998); Admir. L.R. 1-2. Under Admiralty & Maritime Local Rule 6-1(a), "[a] party seeking a default judgment in an action *in rem* must show that due notice of the action and arrest of the property has been given . . . [t]hrough execution of process in accordance with [Fed. R. Civ. P. Supp.] G(3); and [i]n accordance with [Fed. R. Civ. P. Supp.] G(4)." Admir. L.R. 6-1(a)(1).

The court must examine whether the government has strictly complied with the procedural rules governing civil forfeiture proceedings with respect to the Currency.

### A. Fed. R. Civ. P. Supp. G(2): Adequacy of the Complaint

Rule G(2) sets forth the following requirements for a complaint in "a forfeiture action in rem arising from a federal statute," as follows:

> [t]he complaint must:
>
> (a) be verified;
>
> (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
>
> (c) describe the property with reasonable particularity;
>
> (d) if the property is tangible, state its location when any seizure occurred and--if different--its location when the action is filed;
>
> (e) identify the statute under which the forfeiture action is brought; and
>
> (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Fed. R. Civ. P. Supp. G(2). Here, the government's complaint was verified by Postal Inspector Eva Chan. It states the grounds for subject matter jurisdiction, *in rem* jurisdiction, and venue under 28 U.S.C. §§ 1345, 1355(a), 1355(b), and 1395. Compl. at 7 (Verification); *id.* at ¶¶ 1-2, 4. The complaint describes the amount of currency and its denominations, and states that the seizure occurred at the San Francisco International Service Center. The complaint identifies that the forfeiture action is being brought under 21 U.S.C. § 881(a), and provides sufficient facts as described above regarding the suspicious characteristics of the package to support a reasonable belief that the government can meet its burden of proof at trial. *Id.* at ¶¶ 1, 7-8, 9-21. Therefore, the government has satisfied the requirements of Rule G(2).

### B. Fed. R. Civ. P. Supp. G(3): Judicial Authorization and Process

Rule G(3) governs judicial authorization and process. It provides that "[i]f the defendant is not real property, the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Fed. R. Civ. P. Supp. G(3)(b)(i). In the present case, the clerk

issued a valid arrest warrant on February 1, 2017. Arrest Warrant.

Rule G(3) also states that "[t]he warrant and any supplemental process must be delivered to a person or organization authorized to execute it," including "someone under contract with the United States." Fed. R. Civ. P. Supp. G(3)(c)(i). Here, the certificate of service states that a paralegal within the Asset Forfeiture Unit of the United States Attorney for the Northern District of California served the relevant documents in this case by first class mail and certified mail upon potential claimants Robinson and Guzman. Certificate of Service; *see also* Lopez Decl. Ex. A. Accordingly, the government complied with Rule G(3).

### C. Fed. R. Civ. P. Supp. G(4): Notice

Rule G(4) requires the government to provide both general notice to the public and direct notice of the forfeiture action to any known person who reasonably appears to be a potential claimant. Fed. R. Civ. P. Supp. G(4)(a), (b).

#### a. Notice by Publication

Rule G(4)(a)(ii) provides that "a published notice must: "(A) describe the property with reasonable particularity; (B) state the times under Rule G(5) to file a claim and to answer; and (C) name the government attorney to be served with the claim and answer." Here, the notice published by the government describes the amount of currency and the location of its seizure, states that claims and answers under Rule G(5) must be brought within 60 days, and names Gregg W. Lowder as the government attorney to be served with the claim and answer. Proof of Publication of Notice. Therefore, in the present case, the government has satisfied the requirements of Rule G(4)(a)(ii).

Rule G(4)(a)(iii) sets forth the requirements for the frequency of publication of notice. Published notice must appear either once a week for three consecutive weeks or need only appear once, if notice of nonjudicial forfeiture was published on an official internet government forfeiture site for at least 30 consecutive days before the action was filed. Fed. R. Civ. P. Supp. G(4)(a)(iii)(A), (B). As to the means of publication, Rule G(4)(a)(iv) provides the notice may be published by" posting a notice on an official internet government forfeiture site for at least 30 consecutive days." Here, the government's verified complaint was published on an official

6

internet government forfeiture site (www.forfeiture.gov) after the action was filed for at least 30 consecutive days, from February 2, 2017 to March 3, 2017, and remained on the site without being taken down. Therefore, the government's published notice complied with the requirements of Rule G(4)(a)(iii)(A) and G(4)(a)(iv)(C), as the 30-day posting satisfied the requirement of appearing once a week for three consecutive weeks and remained on the site for at least 30 consecutive days.

### b. Notice to Known Potential Claimants

Rule G(4)(b) sets forth the requirements for notice to known potential claimants. It states that "[t]he government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)." Fed. R. Civ. P. Supp. G(4)(b)(i). The notice must state "(A) the date when the notice is sent; (B) a deadline for filing a claim, at least 35 days after the notice is sent; (C) that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and (D) the name of the government attorney to be served with the claim and answer." Fed. R. Civ. P. Supp. G(4)(b)(ii).

Here, the government sent the notice of the action and a copy of the complaint to Roy Robinson and Liz Guzman on February 1, 2017. Certificate of Service; Lopez Decl. Ex. A. Further, since Robinson did not sign the receipt to acknowledge service, the government personally served Robinson with notice of the action and a copy of the complaint on March 3, 2017. Robinson Certificate of Service.

As to the sufficiency of the notice sent by the government, the notice indicates that it was sent on January 31, 2017, provides a 35-day deadline for filing a claim, provides the 21-day deadline for submitting an answer or a motion under Rule 12, and lists Gregg W. Lowder as the government attorney to be served with the claim and answer. [Docket No. 3 (Notice of Forfeiture Action).]

Finally, Rule G(4)(b)(iii)(A) provides that "[t]he notice must be sent by means reasonably calculated to reach the potential claimant." Here, the government sent the notice to the addresses where Robinson and Guzman reside, as confirmed by the USPIS inspectors. Certificate of

Service; Compl. at ¶¶ 13-15. The government also sent the notice to any potential addresses associated with Guzman, including the original address listed on the parcel. Certificate of Service. As Guzman confirmed receipt of the documents on February 4, 2017, and Robinson was personally served on March 3, 2017, the government was able to confirm that both parties actually received notice. Lopez Decl. Ex. A; Robinson Certificate of Service. The government has thus satisfied the requirements of Rule G(4)(b).

In sum, the government has adhered to the procedural rules governing civil forfeiture actions. The court will now address whether default judgment is warranted.

## III. DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment.")

Before assessing the merits of a motion for default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure adequacy of service on the defendant. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors (the "*Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and

those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

First, the court addresses subject matter jurisdiction and personal jurisdiction. The court will then examine the *Eitel* factors to determine whether default judgment is appropriate.

### A. Subject Matter Jurisdiction and *In rem* Jurisdiction

The court has jurisdiction over this matter under 28 U.S.C. § 1355(a), which provides that district courts "have original jurisdiction . . . of any action or proceeding for the recovery or enforcement of any . . . forfeiture . . . incurred under any Act of Congress . . . ." *See also* 28 U.S.C. § 1345 (vesting district courts with original jurisdiction "of all civil actions, suits or proceedings commenced by the United States"). Venue in this district is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1395(b), as the Currency was seized and is found in the Northern District of California. *See* 28 U.S.C. § 1355(b)(1)(A) (forfeiture action may be brought in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred"); 28 U.S.C. § 1395(b) ("[a] civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found.").

This court must also determine whether it has jurisdiction over the Currency. *See In re Tuli*, 172 F.3d at 712. *In rem* jurisdiction treats an item of property as a person against whom suits can be filed and judgments can be entered. *United States v. $29,959.00 U.S. Currency*, 931 F.2d 549, 551 (9th Cir. 1991). The Ninth Circuit relies on a plain reading of 28 U.S.C. § 1355(b) as the appropriate jurisdictional test for *in rem* proceedings. *United States v. Approximately $1.67 Million (US) in Cash, Stock & Other Valuable Assets*, 513 F.3d 991, 996 (9th Cir. 2008). That statute provides that "[a] forfeiture action or proceeding may be brought in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). Therefore, *in rem* jurisdiction exists if the Currency was seized within this district. Since the seizure did occur in the Northern District of California, this district court has *in rem* jurisdiction over the Currency. Compl. at ¶ 8.

### B. *Eitel* Factors

The first *Eitel* factor examines whether the plaintiff will suffer prejudice if a default

judgment is not entered. *Eitel*, 782 F.2d at 1471. Courts have found prejudice where the plaintiff will be without a means for recourse if the defendant fails to appear or defend against the suit. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. In the present case, no party has attempted to oppose the verified complaint or otherwise make a claim on the Currency. Therefore, the first factor weighs in favor of default judgment, as the government has no other opportunity to establish its right to the Currency pursuant to the verified complaint.

The second and third *Eitel* factors address the merits of a plaintiff's substantive claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1472. In analyzing these factors, the court accepts as true all well-pleaded allegations regarding liability. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). As noted, 21 U.S.C. § 881 provides for the forfeiture of money "furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter." 21 U.S.C. § 881(a)(6). Here, the government's allegations, assumed to be true, show that the Currency is subject to forfeiture under 21 U.S.C. § 881(a)(6), as the government asserts that the funds were related to drug trafficking. *See generally* Compl. Evidence supporting this conclusion includes the fact that the narcotics detection canine, which was trained to alert upon detecting the odor of controlled substances, gave such an alert when presented with the parcel in question. The Ninth Circuit has held that the alert provided by a narcotics detection canine is "an important factor in determining probable cause" and provides evidence of a link between seized money and controlled substances. *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 982-83 (9th Cir. 2002). Additional facts in the verified complaint further support the conclusion that the funds were related to drug trafficking. These facts include the manner in which the Currency was packed, the low denomination of the bills and lack of instructions in the parcel, the conflicting explanations offered by the sender and recipient of the parcel, and the manner of mailing. Therefore, there is a strong likelihood that the government would be successful on the merits. The second and third *Eitel* factors thus weigh in favor of granting default judgment.

As to the fourth factor, default judgment is discouraged when the money at stake in the litigation is substantial or unreasonable in relation to the defaulting party's conduct. *Bd. of Trs. v.*

*Core Concrete Const., Inc.*¸11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012). In the present case, the Currency represents the entire amount of money actually seized, all of it believed to be related to drug trafficking. No person has come forward to challenge the forfeiture. Therefore, the fourth *Eitel* factor points in favor of granting default judgment.

The fifth *Eitel* factor considers whether it is likely that the material facts of the case will be disputed by the parties. *Eitel*, 782 F.2d at 1471-72. The likelihood of dispute in this case is minimal, since the potential claimants received notice of this forfeiture action, but have not made any claims to the Currency or otherwise responded to the verified complaint.

The sixth *Eitel* factor considers whether the default by the defendant may have been as a result of excusable neglect. *Eitel*, 782 F.2d at 1472. In the present case, the potential claimants received the complaint and related documents, but have failed to respond to this action. There is no indication that the default was due to the potential claimants' excusable neglect.

The seventh *Eitel* factor dictates that the court must take into account the strong policy favoring a decision on the merits. *Eitel*, 782 F.2d at 1472. This is the sole factor that points against default judgment in the present case. However, it alone is not dispositive. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. There is no claimant in the present case to contest a decision on the merits. Therefore, it is not possible to obtain a decision on the merits and this factor does not outweigh the other six factors.

In sum, the court concludes that the *Eitel* factors favor default judgment in the present case.

**IV. CONCLUSION**

In light of the foregoing, the undersigned recommends that the government's motion for default judgment against Defendant $50,000 in United States Currency be GRANTED. It is further recommended that judgment be entered for the United States. The Currency shall be forfeited to the United States and all right, title, and interest in the Currency shall be vested in the United States of America. Immediately upon receipt of this report and recommendation, the government shall serve a copy of this report on all known interested parties at their last known addresses, and shall file a proof of service.

Any interested party may file objections to this report and recommendation with the Honorable Haywood S. Gilliam within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civil L.R. 72-2.

**IT IS SO ORDERED.**

Dated: August 7, 2017

Donna M. Ryu
United States Magistrate Judge